UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BRIDGEMANS SERVICES LTD,<br><br>Plaintiff,<br><br>v.<br><br>GEORGE HANCOCK, INC.,<br><br>Defendant. | CASE NO. C14-1714JLR<br><br>ORDER DENYING FOURTH PARTY DEFENDANT'S MOTION TO TRANSFER AND DISMISSING CLAIM |

## I.   INTRODUCTION

Before the court is Fourth Party Defendant Emerson Industrial Automation USA, LLC's ("Emerson") motion to transfer Third Party Plaintiff Motors and Controls Corporation's ("Motors and Controls") claims against it to the District of Minnesota. (Mot. (Dkt. # 23).)  Having reviewed the submissions of the parties, the relevant portions of the record, and the applicable law, the court DENIES Emerson's motion to transfer and DISMISSES Motors and Controls's fourth party complaint WITHOUT PREJUDICE.

## II. BACKGROUND

In early 2014, Plaintiff Bridgemans Services Ltd. ("Bridgemans") contacted Defendant George Hancock, Inc. (doing business as Eltech Electric, Inc.) ("Eltech") seeking quotations for the design, manufacture, and installation of an electrical system. (Compl. (Dkt. # 1) ¶ 10.)  Specifically, Bridgemans needed to invert and convert a passenger ferry's electrical power system to operate in accordance with Canadian kilowatt and voltage requirements.  (*Id.*)  After the eventual delivery of the inverter/converter unit, start-up testing of the unit resulted in damage to various components of the ship's electrical system.  (*Id.* ¶ 17.)  On November 7, 2014, Bridgemans filed a complaint against Eltech, alleging breach of the implied warranty of merchantability, breach of warranty of fitness for a particular purpose, breach of express warranty, breach of contract, and negligence.  (*Id.* ¶¶ 20-35.)

To construct the inverter/converter unit, Eltech had entered into a contract with Motors and Controls wherein Motors and Controls agreed to provide Eltech with electrical components necessary for constructing the unit. (Eltech Compl. (Dkt. # 14) ¶ 13.)  On Februrary 20, 2015, Eltech filed a third party complaint against Motors and Controls, alleging that "[t]o the extent there are performance issues related to the Unit, such issues are the result of unmerchantable, defective, and/or negligent designs, services, and/or goods supplied to Eltech by [Motors and Controls]."  (*Id.* ¶ 21.)  Eltech further alleged that "[t]o the extent there are any defects in the Unit's performance that entitle Bridgemans to damages, [Motors and Controls] is responsible for the defects and damages." (*Id.*)

Motors and Controls asserts that it purchased from Emerson the electrical products and components provided to Eltech for installation on the ferry. (Motors and Controls Compl. (Dkt. # 19) at 4.) On May 5, 2015, Motors and Controls filed a fourth party complaint seeking indemnity and contribution from Emerson. (*Id.* at 4-5.)

Emerson, as a fourth party defendant, seeks to enforce a forum selection clause included in its contract with Motors and Controls. (Mot. at 4-6.) That forum selection clause reads: "All disputes arising out of the Contract shall be subject to the exclusive jurisdiction of the State of Minnesota and the parties agree to submit to such jurisdiction." (Manley Decl. (Dkt. # 24) ¶ 3, Ex. B.) Emerson moves the court to transfer the complaint to the District of Minnesota pursuant to 28 U.S.C. § 1404(a).

### III.   ANALYSIS

**A.  Validity of the Forum Selection Clause**

The validity of a forum selection clause is governed by federal law. *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 513 (9th Cir. 1988) ("[T]he federal procedural issues raised by forum selection clauses significantly outweigh the state interests, and the federal rule announced in *The Bremen* controls enforcement of forum clauses in diversity cases."). Under federal law, a forum selection clause is presumed valid and will not be set aside unless the party challenging its enforcement can show it is "unreasonable under the circumstances." *Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 325 (9th Cir. 1996) (internal quotation marks omitted) (citing *Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972)). This exception is construed narrowly. *Argueta*, 87 F.3d at 325.

ORDER - 3

To show that a forum selection clause is unreasonable, the challenging party must demonstrate one of the following: (1) its incorporation into the contract was the result of fraud, undue influence, or overweening bargaining power; (2) the selected forum is so inconvenient that the complaining party will be practically deprived of its day in court; or (3) enforcement of the clause would contravene a strong public policy of the forum in which the suit is brought. *Id.*; *see also Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1140 (9th Cir. 2004). As the party challenging the clause, Motors and Controls bears the "heavy burden of proof" to "clearly show that enforcement would be unreasonable or unjust." *Murphy*, 362 F.3d at 1140.

Motors and Controls contends that the forum selection clause at issue is unduly inconvenient and against Washington's public policy, arguments corresponding to *Zapata* prongs two and three. (Motors and Controls Resp. (Dkt. # 25) at 11-13.) For the following reasons, the court concludes that neither prong is satisfied.[1]

### 1. Inconvenience of Forum

Motors and Controls argues that enforcement of the clause would deprive it of its day in court because of the clause's incorporation of a two-year limitations period. (Motors and Controls Resp. at 13.) However, as Motors and Controls recognizes, the two-year limitations period has not expired, and will not for at least several months. (*Id.*)

---

[1] One of Motors and Controls's arguments is that the forum selection clause was conveyed in a misleading manner, and is thus invalid. (Motors and Controls Resp. at 12-13.) It is possible to construe this argument under *Zapata* prong one—fraud, undue influence, or overweening bargaining power. However, Motors and Controls apparently characterizes that argument as relating to prong three, and the court analyzes it accordingly. (*Id.*)

ORDER - 4

That is a sufficient time, in light of this court's order, for Motors and Controls to refile in the appropriate forum. Accordingly, Motors and Controls fails to show that the forum selection clause at issue would deprive it of its day in court and thus cannot satisfy *Zapata* prong two.

### 2. Public Policy

Motors and Controls also argues that the terms and conditions of its contract with Emerson, including the forum selection clause, were inaccessible enough to render enforcement against Washington's public policy. (Motors and Controls Resp. at 12.) Rather than sending a copy of its terms and conditions to Motors and Controls, Emerson included them in its price quotation via hyperlink. (*Id.*; *see also* Manley Decl. ¶¶ 3-4, Ex. A.) Motors and Controls contends that the "tiny and confusing" nature of this hyperlink and the terms and conditions violates Washington's law that parties to a contract must have knowledge of and assent to incorporated contractual terms. (Motors and Controls Resp. at 12-13); *see also W. Wash. Corp. of Seventh-Day Adventists v. Ferrellgas, Inc.*, 7 P.3d 861, 865 (Wash. Ct. App. 2000).

While it may be that an offeree's knowledge of and assent to incorporated contractual terms implicates a "strong public policy" of Washington, *Argueta*, 87 F.3d at 325, Motors and Controls mischaracterizes the terms and conditions when invoking that policy here. Referring to the hyperlink as "tiny and confusing" is a mischaracterization, as the hyperlink is placed at the very top of the quotation, highlighted in blue, underlined, bold, and clearly leads to the relevant terms and conditions. (*See* Manley Decl. ¶ 3, Ex. A.) Simple failure to read a contract "does not relieve a party of its obligations under the

contract." *Nguyen v. Barnes & Noble, Inc.*, 763 F.3d 1171, 1179 (9th Cir. 2014). In this day and age, failure to click an overt hyperlink in an electronic document is an analogous omission. While disparity in sophistication between parties can increase the degree of notice required, *id.*, a heightened notice requirement does not arise between experienced buyers and sellers.[2] Thus, even if incorporating contractual terms in confusing ways implicates Washington's "strong public policy," the hyperlink in question is not confusing, and does not run counter to that interest.

Because Motors and Controls has not met its heavy burden to demonstrate the clause is unreasonable, the court finds the forum selection clause is enforceable and proceeds to interpret its meaning.

**B.  Interpretation of the Forum Selection Clause**

A forum selection clause must be interpreted before it can be enforced, and federal law governs that interpretation. *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 513 (9th Cir. 1988). The forum selection clause at issue reads: "All disputes arising out of the Contract shall be subject to the exclusive jurisdiction of the State of Minnesota and the parties agree to submit to such jurisdiction." (Manley Decl. ¶ 4, Ex. B.)

Motors and Controls argues that this language limits the parties to a state forum. The clause's reference to jurisdiction in the "State of Minnesota," Motors and Controls asserts, does not "point to a particular federal district." (Motors and Controls Resp. at 7.)

---

[2] Motors and Controls incorrectly applies the "reasonable communicativeness" test in *Wallis v. Princess Cruises, Inc.*, which the Ninth Circuit expressly limits to maritime and common carrier cases. 306 F.3d 827, 835 (9th Cir. 2002). In contrast, the instant third party complaint involves a contract dispute between two sophisticated parties.

ORDER - 6

Accordingly, Motors and Controls concludes that Emerson's motion for transfer pursuant to 28 U.S.C. § 1404(a) is improper, as the proper way to enforce a clause pointing to a non-federal forum is through the doctrine of *forum non conveniens*. (*Id.*); *see also Atl. Marine Constr. Co. v. U.S. Dist. Court*, -- U.S. --, 134 S. Ct. 568, 582 (2013). Emerson responds that by declining to specify state or federal court, the forum selection clause permits a plaintiff to choose either—so long as it is in Minnesota. (Emerson Reply (Dkt. # 30) at 4.)

Put simply, both parties' interpretations are reasonable. The meaning of the language, "All disputes arising out of the Contract shall be subject to the exclusive jurisdiction of the State of Minnesota and the parties agree to submit to such jurisdiction" is ambiguous. Accordingly, the court construes the clause against its drafter—Emerson—and finds that it designates exclusive jurisdiction in the state courts of Minnesota. *See Hunt Wesson Foods, Inc. v. Supreme Oil Co.*, 817 F.2d 75, 78 (9th Cir. 1987) (reasoning that when interpreting ambiguous language in forum selection clauses, as with contracts in general, "the court should construe the language against the drafter").

Because the forum selection clause points to a state court, the court denies Emerson's motion to transfer the case pursuant to 28 U.S.C. § 1404(a).

**C. *Forum Non Conveniens* Dismissal**

When a valid forum selection clause points to a state or foreign forum, "the appropriate way to enforce [it] is through the doctrine of *forum non conveniens*." *Atl.*

*Marine*, 134 S. Ct. at 580.[3]  Because both the *forum non conveniens* doctrine and § 1404(a) transfer of venue require the same balancing-of-interests standard, "courts should evaluate a forum-selection clause pointing to a nonfederal forum in the same way that they evaluate a forum-selection clause pointing to a federal forum." *Atl. Marine*, 134 S. Ct. at 580.  Thus, by briefing the issue of transfer of venue, the parties had "the opportunity to present their views" on the factors relevant to *forum non conveniens* dismissal.  *Costlow v. Weeks*, 790 F.2d 1486, 1488 (9th Cir. 1986).  This court has before it sufficient information to decide the *forum non conveniens* issue without further briefing

In a typical *forum non conveniens* motion, a district court must evaluate both the convenience to the parties and the various public interest considerations, with due deference to the plaintiff's choice of forum.  *Id.* at 581.  However, by agreeing to a forum selection clause, the parties "waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation."  *Id.* at 582.  In other words, "a district court may consider arguments about public-interest factors only."  *Id.*  The party challenging a valid forum selection clause must show that the public interest factors "overwhelmingly disfavor" enforcement

---

[3] Although Emerson did not explicitly raise *forum non conveniens* in its motion to dismiss, the doctrine of *forum non conveniens* lies within the court's inherent authority.  *Chambers v. NASCO*, 501 U.S. 32, 44 (1991).  The district court may raise *forum non conveniens* of its own accord.  *See Corporacion Mexicana de Servicios Maritimos, S.A. de C.V. v. M/T Respect*, 89 F.3d 650, 656 n.1 (9th Cir. 1996) (citing *Heller Financial, Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1293 (7th Cir. 1989); *Plum Tree, Inc. v. Stockment*, 488 F.2d 754, 757 (3d Cir. 1973)); *Costlow v. Weeks*, 790 F.2d 1486, 1488 (9th Cir. 1986) (noting "the long-approved practice of permitting a court to transfer a case *sua sponte* under the doctrine of *forum non conveniens* . . . so long as the parties are first given the opportunity to present their views on the issue"); *Tazoe v. Airbus S.A.S.*, 631 F.3d 1321, 1336 (11th Cir. 2011); *Wong v. PartyGaming, Ltd.*, 589 F.3d 821, 830 (6th Cir. 2009).

(whether via transfer or dismissal). *Id.* at 583.  In addition, when the parties' contract includes a valid forum selection clause, "the plaintiff's choice of forum merits no weight. Rather, as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Id.* at 581.  Public interest considerations will rarely defeat a transfer motion seeking to enforce a valid forum selection clause, and the clause is to be "'given controlling weight in all but the most exceptional cases.'" *Id.* at 579 (quoting *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988) (Kennedy, J., concurring)).

The Ninth Circuit provides five public interest guideposts by which to evaluate a *forum non conveniens* dismissal:  (1) local interest in the lawsuit; (2) the court's familiarity with the governing law; (3) the burden on local courts and juries; (4) congestion in the court; and (5) the costs of resolving a dispute unrelated to a particular forum.  *Boston Telecomms. Grp., Inc. v. Wood*, 588 F.3d 1201, 1211 (9th Cir. 2009). Motors and Controls argues that these five factors counsel against dismissal on *forum non conveniens* grounds.  (Motors and Controls Resp. at 7.)

Regarding the first factor, Motors and Controls correctly argues that "Washington has an identifiable interest in protecting the bargained-for rights and expectations of its residents, including Motors and Controls."  (Motors and Controls Resp. at 9.)  But presumably Minnesota's interest in "protecting the bargained-for rights and expectations of its residents"—in this case, Emerson—is at least as strong as Washington's. Recognizing that the plaintiff's chosen forum need be neither "the principal locus of the case" nor need it have "more of an interest than any other jurisdiction," the court

ORDER - 9

concludes that this factor carries some weight. *See Boston Telecomms.*, 588 F.3d at 1212. Motors and Controls reasons that the second factor also counsels against transfer (and accordingly, dismissal), because "federal judges routinely apply the law of a State other than the State in which they sit," and thus could capably apply Minnesota law. (*Id.*); *Atl. Marine*, 134 S. Ct. at 584. This court is certainly capable of applying Minnesota law, but it has no particular "familiarity" therewith.[4] *Boston Telecomms.*, 588 F.3d at 1211. Applying the third and fourth factors, Motors and Controls sees "no evidence that court congestion plays any role." (Motors and Controls Resp. at 9.) This is true, but the burden is on Motors and Controls, as the party seeking to avoid enforcement of the forum selection clause, to demonstrate how these factors favor its selected forum.

      Motors and Controls's argument based on the final public interest guidepost deserves closer scrutiny. It argues that litigating its claims in Washington would be cheaper and more convenient than "re-litigating" the claims in Minnesota. (*Id.* at 9-10.) Insofar as Motors and Controls refers to litigation costs to the parties themselves, these are exactly the types of private costs that are not to be considered in the balancing of interests analysis. *See Atl. Marine*, 134 S. Ct. at 583-84. By agreeing to a valid forum selection clause, Motors and Controls "waive[d] the right to challenge the preselected forum as inconvenient or less convenient for [itself] or [its] witnesses, or for [its] pursuit of the litigation." *Id.* at 582. Moreover, the fifth public interest factor asks not about judicial resources, but rather evaluates the burden imposed upon a forum by litigation

---

[4] The terms and conditions contain a choice of law clause selecting Minnesota's law, Manley Decl. ¶ 4, Ex. B., and both parties assume in their pleadings that Minnesota law applies.

related only to another forum.[5]  *Boston Telecomms.*, 588 F.3d at 1211.  That is not the case here, as the action does relate to Washington, and thus there are no costs unrelated to this forum.  This weighs in favor of retaining the case in Washington, but only marginally.

Although Motors and Controls's arguments move the needle with respect to the first and fifth public interest factor, that movement is slight.  As such, the court concludes that Motors and Controls fails to meet the substantial burden of showing that, considered cumulatively, the public interest *forum non conveniens* factors "overwhelmingly disfavor" enforcement of the forum selection clause.  *Atl. Marine*, 134 S. Ct. at 583.  Accordingly, the court finds dismissal on the grounds of *forum non conveniens* appropriate and DISMISSES Motors and Controls's fourth party complaint WITHOUT PREJUDICE.

//

//

//

//

---

[5] Although judicial resources are not a public interest factor, the court notes that Eltech has already filed its indemnity and contribution claims against Emerson in the District of Minnesota.  *See* Complaint, *Eltech Electric, Inc. v. Emerson Industrial Automation USA, LLC*, No. 15-01819, Dkt. # 1 (D. Minn. Mar. 31, 2015).  In that case, Emerson responded and counterclaimed, *see* Answer and Counterclaim, *Eltech Electric*, No. 15-01819, Dkt. # 10, and Eltech responded in kind, *see* Answer to Counterclaim, *Eltech Electric*, No. 15-01819, Dkt. # 16.  In other words, both parties have consented to Minnesota federal court as a proper forum, and it is disingenuous to imply that dismissal on *forum non conveniens* grounds would require duplicative litigation, over and above what is already ongoing.  Motors and Controls can file its claims in the District of Minnesota, where they can be consolidated with Eltech's claims against Emerson.

## IV. CONCLUSION

For the foregoing reasons, the court DENIES Emerson's motion to transfer, and DISMISSES Motors and Controls's fourth party complaint WITHOUT PREJUDICE.

Dated this 7th day of August, 2015.

JAMES L. ROBART
United States District Judge